UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GERARD STEPHAN,

                MEMORANDUM AND ORDER

        Plaintiff,

    --against--                CV-07-0478
                                (Wexler, J.)

BABYSPORT, LLC and TOMMY HABEEB,

        Defendants.
------------------------------------------------------------X

    LAW OFFICES OF TODD WEGROVSKY, PLLC
    BY: TODD WENGROVSKY, ESQ.
    285 Southfield Road Box 585
    Calverton, NY 11933
    Attorneys for Plaintiff

    DANAMRAJ & YOUST, P.C.
    BY: KENNETH THOMAS EMANUELSON, ESQ.
    1450 Premier Place
    5910 North Central Expressway
    Dallas, Texas 75206
    Attorneys for Defendants

WEXLER, District Judge:

    This is an action commenced by Plaintiff Gerard Stephan ("Plaintiff" or "Stephan") against Defendants Babysport, LLC ("Babysport") and Tommy Habeeb ("Habeeb") (collectively "Defendants") alleging patent infringement. Presently before the court are Defendants' motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure as well as Defendants' alternative motions for change of venue and/or dismissal for failure to state a claim upon which relief can be granted.

## BACKGROUND

I. <u>The Parties and the Allegations of the Complaint</u>

The following facts are drawn from Plaintiff's complaint and assumed, for the purpose of this motion, to be true.

Plaintiff is an individual residing in Suffolk County, New York. Babysport is a limited liability corporation organized under the laws of the State of Texas with its principal place of business in that state. Defendant Habeeb is the Managing Member of Babysport and a resident of Dallas, Texas. There is no allegation that either Defendant maintains an address or place of business, has any employees or agents, or maintains an agent for service of process within the State of New York.

Stephan holds a patent as the inventor of a device that adapts a nipple cap from a baby's drinking bottle to a standard beverage bottle (the "Patent"). Following the issuance of the Patent, Stephan engaged the services of a marketing firm, which developed certain promotional materials geared toward the product's release. Just prior to the release of the promotional materials, Stephan alleges that he became aware of a product manufactured by Babysport that is "strikingly similar" to the invention for which he received the Patent. The product manufactured by Babysport is a similarly designed adapter and is advertised as able to turn "any bottled water into a baby bottle" (the "Babysport Product").

Babysport maintains a website that provides information about its product and allows users to e-mail the company for more information about the adapter. While the Babysport Product is not available for direct purchase at the Babysport website, it is available for online purchasing via a link to the Amazon.com website. The Babysport website also advises visitors that the product is available for purchase at retail stores including Seven Eleven. Habeeb, individually, maintains a website that outlines the details of his several entrepreneurial ventures. This site contains a short statement that he is the inventor of the "Babysport Water Bottle Nipple Adapter." Similar to the Babysport website,

visitors to the Habeeb site cannot complete a transaction to directly purchase a Babysport adapter via his website.

Stephan states that he purchased the Babysport Product at Seven Eleven retail stores in Suffolk County. Documents provided to the court by Plaintiff indicate that Defendants' product came to New York by way of the McLane Company ("McLane"). McLane is a distributor that maintains regional warehouses from which products are shipped. Included among those warehouses is the McLane northeast regional warehouse located in the State of New York. That warehouse distributes to stores in New York, including the Seven Eleven where the Babysport Product was purchased. The McLane northeast regional warehouse in New York also distributes products to Pennsylvania, Virginia and New Jersey.

Plaintiff's documents show billing to McLane in Texas and an indication on certain invoices indicate that the products were bound for the McLane northeast warehouse in New York State. Defendants submit affidavit testimony setting forth the volume of sales to MacLane by Babysport. Those documents state the total sales volume from Babysport to MacLane as approximately $18,000. Of that amount, approximately $1,300 worth of product was distributed to MacLane's northeast warehouse. Of the states serviced by the northeast warehouse, Babysport estimates that less than $360 worth of the Babysport Product was ultimately sold in New York State.

## DISCUSSION

I. Personal Jurisdiction

A district court may exercise jurisdiction over a defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(A). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." See, e.g., Best Van Lines, Inc. v. Walker, 2007 WL 1815511 at *2 (2d Cir. June 26, 2007). Where, as here, no discovery has been conducted, all

factual matters are to be resolved in the light most favorable to plaintiff. E.g., Jazini v. Nissan Motor Co., Ltd., 148 F.3d 184, 191 (2d Cir. 1998). If, but only if, jurisdiction is proper under state law must the court address whether exercise of jurisdiction comports with constitutional standards of due process under the Fourteenth Amendment. Best Van Lines, 2007 WL 1815511 at *2.

A.   Personal Jurisdiction Under New York Law

Plaintiff alleges personal jurisdiction over Defendants pursuant to sections 301, 302(a)(1), and 302(a)(3) of the New York Civil Practice Law and Rules ("CPLR"). The court considers each basis in turn.

1.   Section 301

A foreign corporation is amenable to jurisdiction under CPLR section 301 if it is "doing business" in New York State. A foreign corporation is "doing business" if it engages in "such a continuous and systematic course of doing business" sufficient to support a finding of its presence in this jurisdiction. E.g., Frummer v. Hilton Hotels International, Inc., 281 N.Y.S.2d 41, 43 (1967). A corporation is "present in New York . . . if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58, (2d. Cir 1985), quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Accord Laufer v. Ostrow, 449 N.Y.S.2d 456 (1982).

Factors tending to show a presence in New York and thus a finding of jurisdiction include the existence of a New York office, the presence of bank accounts in New York, ownership of property in New York, and the presence of agents or of employees in New York. Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990); see also Hoffritz, 763 F.2d at 58. Solicitation of business alone, however, is insufficient to find a corporate presence in this state. Landoil, 918 F.2d at 1043.

4

A foreign supplier of goods to an independent agency that solicits orders from New York purchasers is not "present" in this jurisdiction. Laufer, 449 N.Y.S.2d at 459. Additionally, a foreign corporation operating in this manner is not subject to jurisdiction merely because it solicits business in New York. See, e.g., Delagi v. Volkswagenwerk AG of Wolfsburg Germany, 328 N.Y.S.2d 653, 657 (1972). Instead, where the solicitation of business is asserted in support of a "doing business" allegation, the foreign corporation's activities must rise to the level of solicitation plus "some additional activities . . . sufficient to render the corporation amenable to suit." E.g., Miller v. Surf Properties, Inc., 176 N.Y.S.2d 318, 321 (1958), quoting International Shoe Co. v. Washington, 326 U.S. 310, 314 (1945). This "solicitation-plus" standard is not satisfied merely through sales of a manufacturer's product in New York. Delagi, 29 N.Y.2d at 433 ("[M]ere sales of a manufacturer's product, however substantial, have never made the foreign corporation amenable to suit in this jurisdiction."). To support the exercise of jurisdiction, the defendant corporation must solicit business in New York in a manner that is "substantial and continuous" and must engage in other activities of substance in the state. Medpay Systems, Inc. v. Medpay USA, LLC, 2007 WL 1100796 at *6 (E.D.N.Y. March 29, 2007); see also Landoil, 918 F.2d at 1043-44.

Even construing the facts alleged in the light most favorable to Plaintiff, it is clear that jurisdiction cannot be maintained pursuant to Section 301. Defendants do not maintain a New York office, do not have agents in New York, do not have any employees in New York, nor maintain any New York bank accounts. The court, therefore cannot find that either defendant is "present" within this jurisdiction. While the alleged infringing product was offered for sale in New York stores, these sales—however substantial—do not create personal jurisdiction over Babysport or over Habeeb. This is true even in light of defendant's alleged solicitation via its website. This solicitation does not amount to conducting business in a manner that is "substantial and continuous" while engaging in other substantive activities in the state.

2. <u>Section 302(a)(1)</u>

CPLR Section 302(a)(1) provides for jurisdiction over a nondomicilliary defendant who transacts any business within the state so long as the cause of action arises out of the defendant's New York transaction. <u>PDK Labs, Inc. v. Friedlander</u>, 103 F.3d 1105, 1109 (2d Cir. 1997). A finding of jurisdiction under Section 302(a)(1) requires a showing that defendant: (1) "transacts any business" in New York and, (2) that the cause of action "arises from" such transaction. <u>Best Van Lines</u> 2007 WL 181551 at *6.

When considering whether a defendant "transacted business," New York courts rely on the constitutional standard set forth by the Supreme Court: "whether the defendant's conduct constitutes 'purposeful[] avail[ment] . . . of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Best Van Lines</u>, 2007 WL 1815511 at *6 quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958). Proof of one transaction, though the defendant never entered New York, may be sufficient to confer jurisdiction "so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted." <u>PDK Labs</u>, 103 F.3d at 1109, quoting <u>Kreutter v. McFadden Oil Corp.</u>, 527 N.YS.2d 195, 198-99 (1988).

A determination that a cause of action "arises" out of a New York transaction requires a finding of an "'articulable nexus between the transaction and the cause of action. . .' or [a] . . . 'substantial relationship between the transaction and the claim asserted.'" <u>Best Van Lines</u>, 2007 WL 181551 at *9, quoting <u>Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC</u>, 450 F.3d 100, 103 (2d Cir. 2006). The court looks to many factors to determine whether a cause of action arises out of the transaction of business at issue. <u>See, e.g.</u>, <u>IMR Assocs. v. C.E. Cabinets, Ltd.</u>, 2007 WL 1395547 at *3 (E.D.N.Y. May 11, 2007). These factors include: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New

York for the purpose of meeting with parties to the contract regarding the relationship; (3) what the choice-of-law clause is in any such contract; and (4) whether the contract requires the defendant to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Id. quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004).

Stephan asserts that Babysport has transacted business in New York based upon the sales in local Seven Eleven stores, the Babysport website, and sales to New York customers via Amazon.com, a site to which Babysport links. The court finds such sales insufficient to constitute the "purposeful availment" of the privilege of conducting business in New York required to sustain jurisdiction under Section 302(a)(1).

As to the sales by local Seven Eleven stores, such sales arise out of the sale of Babysport products, not to Seven Eleven, but from Babysport in Texas, to MacLane, a Texas corporation. MacLane thereafter distributed the product to its warehouses throughout the country for sale in stores such as Seven Eleven. Invoices submitted by Plaintiff indicate that Babysport billed MacLane in Texas. Stephan suggests that because the invoice contains the memorandum "MacLane NE" that Babysport contracted to sell goods to MacLane Northeast, located in New York. While Babysport may have been aware that its products were later distributed by MacLane throughout the United States, such knowledge constitutes neither knowledge of the products' ultimate destination nor purposeful availment of the protection of New York law.

When considering whether the Babysport website is sufficient to support a transacting business claim, the court notes that analysis of personal jurisdiction stemming from such activity involves application of "traditional principles to new situations." Best Van Lines, 2007 WL 1815511 at *11. Courts analyze cases involving the Internet under a sliding scale of interactivity first articulated in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). Best Van Lines, 2007 WL 1815511 at *10. Recently, the Second Circuit noted that "a website's interactivity may be useful

for analyzing personal jurisdiction under Section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York—"that is, whether the defendant, through the website, purposefully availed himself" of the privileges and the benefits of New York law. Id. at *11 (internal quotation marks omitted).

The Zippo court suggested that if a defendant enters into a contract with residents of a foreign jurisdiction via its website, then jurisdiction is likely proper. Id. However, one who maintains a "passive" website that simply makes information available to others in a foreign jurisdiction will likely not be subject to personal jurisdiction in that forum. Id. Between these ends of the spectrum are websites that allow "a user [to] exchange information with the host computer." Id. The court must examine the level of interactivity and the "commercial nature of the exchange of information that occurs on the website." Id.

Babysport's website does not rise to the level of transacting business in New York State. Customers cannot complete a contract for sale via the Babysport website. Instead, the website links the user to sites such as Amazon.com where the product may be purchased.[1] The Babysport website is thus best described as a "passive" website which "does little more than make information available to those who are interested" in the product. See Best Van Lines, 2007 1815511 *11. As such, it cannot support a finding of the transaction of business sufficient to support the exercise of personal jurisdiction. See id.

---

[1] The court notes that the Amazon.com sales referred to by Plaintiff occurred after the filing of the complaint and therefore cannot be the basis for the exercise of personal jurisdiction. Even if those sales, however, took place before the filing of the complaint, they would, nonetheless, for the reasons stated above, be insufficient to constitute transacting business under Section 302(a)(1).

3.  Section 302(a)(3)

Section 302(a)(3), like Section 302(a)(1), provides for long arm jurisdiction over a nondomicilliary defendant where the cause of action arises out of certain of defendant's activities, enumerated in the statute. See CPLR §302(a). Section 302(a)(3) provides for the exercise of jurisdiction over a defendant who, "in person or through an agent," commits a tortious act outside of New York that causes injury within New York. In addition, the defendant's activities must meet one of the two sets of statutory criteria set forth in subsections (i) or (ii) of Section 302(a)(3).

As to subsection (i), jurisdiction is proper if, in addition to commission of the tortious act outside of New York with in-state consequence, the defendant either: (1) regularly does or conducts business in New York, (2) engages in any other "persistent course of conduct" in New York, or (3) derives substantial revenue from goods used or services rendered in New York.

As to subsection (ii), jurisdiction is proper, if, in addition to commission of the tortious act outside of New York with in-state consequence, the defendant: (1) expects or should reasonably expect his acts to have New York consequences and (2) derives "substantial revenue" from interstate or international commerce. N.Y.C.P.L.R. §302(a)(3)(i)(ii); see LaMarca v. Pak-Mor Manufacturing Co., 713 N.Y.S.2d 304, 307 (2000); see also Overseas Media, Inc. v. Skvortsov, 407 F.Supp. 2d 563, 575 (S.D.N.Y. 2006).

There is no factual dispute that Babysport is a limited liability company organized under the laws of Texas and that its principal place of business is in Dallas, Texas. Plaintiff alleges that Babysport manufactures products in Texas that infringe his patent. Assuming, without deciding, that Babysport's adapter infringes defendant's patent, then Babysport's sale of the product to MacLane constituted a tortious act in Texas. A patentee suffers injury at the location in which an infringing item directly impacts his interest. See Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., 479 F. Supp.2d 388, 400 (S.D.N.Y. March 29, 2007). The holder of a patent suffers economic loss at

9

the place where the infringing product is sold as he or she loses business there. <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1571 (Fed. Cir. 1994). Since the allegedly infringing product was offered for sale in New York, Plaintiff would, indeed, suffer injury in New York. In light of the fact that Plaintiff makes a prima facie showing that Defendants committed a tortious act outside of New York with consequence in the state, the court turns to consider whether Plaintiff makes the showing necessary to state a claim under subsections (i) or (ii) of Section 302(a)(3).

    i.    <u>Section 302(a)(3)(i)</u>

Plaintiff makes not even a prima facie showing to support a claim that Defendants regularly do or conduct business or engage in any other "persistent course of conduct" in New York. As discussed above, the only connection with New York is the eventual sale of the infringing product in this state. That sale was neither a direct sale by Defendants nor a sale by related entities. Thus, there is no showing in support of the claim that Defendants are doing business in New York sufficient to support the first two alternative prongs of section 302(a)(3)(i).

The court reaches the same result with respect to the final alternative prong of Section 302(a)(3)(i) – the substantial revenue issue. Defendants derived revenue from the sale to MacLane, made in Texas, not from any New York sale. While Plaintiff's intent to serve the New York market may support a claim that he is injured by the New York sale of the infringing product, it does not support a finding that Defendants Babysport and Habeeb derive substantial income from goods purchased in this state from an unrelated entity in the final chain of distribution. Even if the sales by MacLane were attributed to Defendants, those sales do not constitute "substantial revenue" to Defendants. As noted above, the total sale of the Babysport Product in the state of New York through the filing of this lawsuit is estimated to be less than $400 – approximately 2% of the Babysport Product sold to MacLane. In light of the foregoing, the court holds that jurisdiction does not exist under CPLR Section 302(a)(3)(i).

ii.     Section 302(a)(3)(ii)

To support jurisdiction under Section 302(a)(3)(ii), Plaintiff must make a prima facie showing that Defendants expect or should reasonably expect their acts of infringement to have New York consequences and derive "substantial revenue" from interstate or international commerce.

The test for determining whether a defendant "expects or should reasonably expect" his actions to have consequences in New York is objective, rather than subjective. Kernan v. Kurz-hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999); Tri-Coastal Design Group v. Merestone Merch., Inc., 2006 WL 1167864 *4 (S.D.N.Y. 2006); e.g., Courtlandt Racquet Club, Inc. v. Oy Saunatec, Ltd., 978 F. Supp. 520, 523 (S.D.N.Y. 1997); Allen v. Auto Specialties Mfg. Co., 45 A.D. 331, 333, 357 N.Y.S.2d 547, 550 (3d Dep't. 1974). The "reasonable expectation" requirement under the New York long arm statute is interpreted in a manner consistent with Supreme Court precedent interpreting the requirements of the Due Process Clause of the United States Constitution. Kernan, 175 F.3d at 241; see Ivoclar Vivident, Inc. v. Ultident, Inc., 2005 WL 1421805 *5 (W.D.N.Y. 2005) ("reasonable expectation foreseeability requirement intended to avoid conflict with due process limits on exercise of jurisdiction).

A "mere likelihood or foreseeability that a defendant's product will find its way into New York" will support neither a finding of jurisdiction under New York law nor the Federal Constitution. Kernan, 175 F.3d at 241; see also Asahi Metal Indus. v. Superior Court of California, Solano County, 408 U.S. 2, 107 (1987). Instead, the defendant must purposefully avail itself of the protections and benefits of New York law. See, e.g., Martinez v. American Standard, 91 A.D.2d 652, 653, 457 N.Y.S.2d 97, 99 (2d Dep't 1982). In the case of a manufacturer, the "purposeful availment" standard is met by a "discernible effort to serve, directly or indirectly, a market in the forum state." Darienzo v. Wise Shoe Stores, Inc., 74 A.D.2d 342, 346, 427 N.Y.S.2d 831, 834 (2d Dep't. 1980). Evidence that a defendant manufacturer knew or reasonably should have known the ultimate destination of its product

is essential to a finding of jurisdiction under Section 302(a)(3)(ii). Martinez, 91 A.D.2d at 653, 457 N.Y.S.2d at 99.

New York State and Federal cases have decided whether the reasonable expectation requirement is sufficiently alleged where, as here, there is a sale to a foreign distributor that makes the independent decision to re-sell the product in New York. In those cases, person jurisdiction is sustained only where it can be shown that when the named defendant made the out of state sale, it sought a "purposeful affiliation" with the State of New York. See Tri-Coastal, 2006 WL 1167864 *5-7 (discussing cases).

Plaintiff's allegations are insufficient to support the finding that Defendants should reasonably expect their acts to have consequence in the State of New York. Once the sale of the allegedly infringing product was made to MacLane, the products could have be available for ultimate sale in any one of the states in which MacLane does business. To sustain jurisdiction on the basis that New York was one of those possible destinations is too tenuous a connection on which to base jurisdiction. Such an exercise would be inconsistent with both the New York long arm statute and the Due Process clause of the United States Constitution.

In light of the court's holding that Defendants could not have reasonably expected for their acts to have consequence in New York, it is unnecessary to determine whether Defendants "derive substantial revenue form interstate or foreign commerce."

For the foregoing reasons, the court holds that personal jurisdiction does not exist pursuant to Section 302(a)(3).

B.  Transfer

Even where a court lacks personal jurisdiction over a defendant it may transfer the case to a jurisdiction where both jurisdiction and venue are proper if such transfer is "in the interests of justice." 28 U.S.C. §1406(a); Corke v. Sameiet M. S. Song of Norway, 572 F.2d 77, (2d Cir. 1978); Hatfield v.

Asphalt Int'l, Inc., 2004 WL 287680, at *4 (S.D.N.Y. Feb.11, 2004); Volkswagen De Mexico, S.A. v. Germanischer Lloyd, 768 F. Supp. 1023, (S.D.N.Y.1991); see Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466(1962). The question of whether dismissal or transfer is appropriate is within the discretion of this court. Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir.1993). When determining this issue the court takes into account the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, 369 U.S. at 466-67.

Transfer will serve the interests of justice. Defendants are both amenable to suit and venue is proper in the proposed transferee district, the Northern District of Texas. See 28 U.S.C. §1400(b) (providing for venue in patent case in district where defendant resides or where alleged infringement occurred and defendant has place of business). Dismissal of this action would require Plaintiff to file a new action in Texas, while transfer will allow this action to proceed in that forum and lead to adjudication on the merits. See Hatfield, 2004 WL 287680, at *5. Defendants' presence in Texas would not prejudice Defendants but be to their benefit in that they would litigate this matter in their home state, presumably the location of all relevant documents and witnesses.

In light of the foregoing, the court holds that transfer is appropriate and orders this case transferred to the Northern District of Texas.

C.  Remaining Issues

Defendants also move to dismiss Plaintiff's claim on the merits. In light of the court's holdings regarding the lack of personal jurisdiction and transfer, the court expresses no opinion as to these issues and leaves them for adjudication by the transferee court for decision.

CONCLUSION

For the foregoing reasons, the court denies Defendants' motion to dismiss for lack of jurisdiction but, holding that jurisdiction is New York is not proper and that the interests of justice will be served by transfer, the court orders this matter transferred to the United States District Court for the

Northern District of Texas. The Clerk of the Court is directed to terminate the motion and transfer the file in this matter to the United States District Court for the Northern District of Texas and to thereafter close the file in this case.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       August 6, 2007